Filed 12/27/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br>    Plaintiff and Respondent,<br><br>v.<br><br>LAMAR WILLIAMS,<br>    Defendant and Appellant. | A164862<br><br>(Alameda County<br> Super. Ct. No. 148769A) |

In 2005, defendant Lamar Williams was convicted of the first degree murder of Stephanie Franklin, together with true findings on a drive-by shooting special circumstance and true findings on allegations that Williams personally used a firearm and a principal was armed with a firearm. Williams was sentenced to an aggregate term of 65 years to life imprisonment without the possibility of parole.

On May 29, 2007, we affirmed the conviction.  We modified the sentence to reflect the appropriate term for first degree murder with special circumstances, life imprisonment without the possibility of parole, and struck a parole revocation restitution fine as unauthorized.

On February 23, 2022, the trial court summarily denied Williams' petition for resentencing of his conviction for first degree murder under

1

Penal Code former section 1170.95,[1] now section 1172.6,[2] on the basis that Williams failed to make a prima facie case for relief.

Williams appeals the denial of his petition for resentencing. We find the jury's true finding on the drive-by shooting special circumstance allegation, together with the court's instructions, conclusively demonstrates the jury found Williams acted with the requisite intent and conduct to convict him of first degree murder under the amendments to section 188 and 189 effective January 1, 2019. Therefore, he is ineligible for relief under section 1172.6 as a matter of law and we shall affirm.

BACKGROUND

A.    Direct Appeal

The factual and procedural background set forth below is taken, in part, from our prior opinion affirming Williams' conviction for the first degree murder of Franklin (§ 187, subd. (a)), together with true findings of a drive-by shooting special circumstance allegation (§ 190.2(a)(21)) and allegations that Williams personally used a firearm and a principal was armed with a firearm.[3] (*People v. Williams* (May 29, 2007, A113199) [nonpub. opn.] at p. 5.)

---

[1]    All undesignated statutory references are to the Penal Code.
[2]    Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6. (Stats. 2022, ch. 58, § 10.) There were no substantive changes to the statute. Throughout this opinion, we cite to section 1172.6 for ease of reference.
[3]    Our recitation of the background facts as stated in our prior opinion is solely for the purpose of efficiently summarizing the background of this case. In resolving the issue raised on appeal, our analysis is based on our independent review of the record of conviction including the jury instructions and jury verdicts, and not the summary of facts in our prior opinion.

2

The murder of Stephanie Franklin occurred in connection with a drive-by shooting that took place following a late-night confrontation at an eatery in Oakland. Williams arrived at the eatery in his brother's car with L.J.,[4] a person he was dating. Williams' brother was driving. Another car was also there – S.S. was driving and Franklin, L.W. and G.C. were passengers.

At the eatery, L.W. greeted L.J., hugged her, and tried to " 'hit on' her, " which angered Williams. Williams reprimanded L.J. and told her to order her food and return to the car; she complied. L.J. saw L.W. sneering at Williams while the men talked. L.W. returned to S.S.'s car and said some guy " 'disrespected him' " while he was trying to be friendly. L.W. told S.S. to take him home, but then apparently changed his mind and asked her to go back to the eatery and she drove back to the eatery.

Williams testified that after L.J. had spoken with L.W., L.W. smirked at Williams and told him " 'I'm on one.' " Williams thought the comment suggested L.W. was " 'looking for trouble.' " Williams also thought L.W. had a gun because he did not back down from Williams. S.S. drove away, but then returned and stopped by a nearby street corner, and Williams thought L.W. intended to shoot him. Williams borrowed his brother's cell phone to call Lanare Wise, who said he would come right away. Williams knew Wise to be armed. Williams told Wise over the phone that maybe the people in S.S.'s car were about to shoot him.

---

[4]     Pursuant to the California Rules of Court governing "Privacy in Opinions," we refer to certain persons by their initials. (Cal. Rules of Court, rule 8.90(b)(4), (10), (11).)

Wise arrived in a car driven by Jideofor Ajaelo. Wise was in the front passenger seat and two other passengers (A.G. and M.A.) were in the rear seat. Williams got into the car, sat in the rear passenger seat behind Wise, and pointed at S.S.'s car, saying " 'That the car right there,' " or " 'There they go, right there.' " S.S.'s car drove off and Ajaelo followed it.

Williams claimed he did not know Wise had a gun at that time. A.G., a passenger in the back seat, had a shotgun. Williams was surprised and took the shotgun to stop A.G. from using it.[5] Wise then unexpectedly fired a handgun continuously at S.S.'s car until the chamber was empty.[6] After Wise emptied his gun, he looked back at Williams as if to ask why he had not been shooting. Williams stuck the shotgun out the window and pretended it was jammed and would not fire. He later told the police the shotgun fired accidentally into the air.[7] At trial, Williams testified he did not tell Wise to do anything to L.W. or the people in S.S.'s car, and that Wise acted on his own.

---

[5] At trial, A.G. testified that Williams got into Ajaelo's car and then Ajaelo drove next to another car. A.G. heard shots and ducked because he thought someone was shooting at them. Then he realized the shots were fired from an area where Williams was sitting. Although he did not see the gun, A.G. knew by the sound that it was a handgun. A.G. claimed Wise was not the shooter. A.G. also testified that he did not remember seeing a shotgun and Williams did not fire a shotgun.

[6] The police recovered 15 cartridge cases at the scene that came from a single firearm.

[7] The police did not recover any shotgun pellets at the scene or in S.S.'s car. A shotgun loaded with five shotgun shells was found in the backseat of a car at Wise's residence. After the shotgun was test fired, the firing pin did not advance sufficiently to fire a second round.

As S.S. drove her car away from the eatery, she heard gunshots coming from the back right rear of the car driving on her left (later identified as Ajaelo's car), and S.S. felt a bullet hit her leg. S.S. saw what looked like a rifle sticking out of the back right window of Ajaelo's car. S.S. screamed at the people in Ajaelo's car to stop shooting, stopped her car, and tried to flee on foot, but fell because of her gunshot wound. S.S. was shot five times but survived. Franklin died from a gunshot wound to her back. L.W. was shot in the arm and the leg but survived. G.C. was uninjured.

After the shooting ended, Ajaelo drove Williams back to the eatery. Williams, who had been gone about 10 minutes by that time, returned to his brother's car and asked his brother to drive him and L.J. to another location. Williams did not say where he had been and L.J. did not ask him; Williams said nothing about the shooting.

Williams was charged by information with the murder of Franklin, with a drive-by shooting special circumstance allegation; the attempted murders of S.S., L.W., and G.C.; and being a felon in possession of a firearm. The information also alleged firearm and a prior conviction sentence enhancements. Wise and Ajaelo were charged in the same information, but tried separately.

The jury found Williams guilty of first degree murder, premeditated attempted murder (three counts), and being a felon in possession of a firearm. The jury also found true the drive-by shooting special circumstance allegation. The jury found not true the allegations of personal and intentional discharge of a firearm; the jury found true allegations of personal use of a firearm and a principal being armed with a firearm.

5

Williams was initially sentenced to 35 years to life without the possibility of parole for the Franklin murder, consecutive terms of 10 years to life for the attempted murders, and a two-year concurrent term for being a felon in possession of a firearm; sentence enhancements for the personal use of a firearm were stayed.

On Williams' direct appeal in 2007, we affirmed the convictions, but modified the sentence on the conviction for first degree murder with a special circumstance. The sentence was modified to reflect a term of life imprisonment without the possibility of parole and the parole revocation restitution fine was stricken as unauthorized. The Supreme Court denied review. (*People v. Williams* (dec. Aug. 29, 2007, S153931).)

### B.    Section 1172.6 Petition

On February 8, 2019, Williams filed a section 1172.6 petition using "a downloadable form" petition and declaration. The petition included allegations that an information had been filed that allowed the prosecution to proceed under a theory of the natural and probable consequences doctrine, that he had been convicted of first degree murder, and that he could not now be convicted of first or second degree murder because of changes made to sections 188 and 189, effective January 1, 2019.

Following the trial court's appointment of counsel to represent Williams, the filing of the People's written response, and a February 23, 2022 hearing, the court summarily denied the petition on the basis that Williams had failed to make a prima facie case. At the hearing, the court found "no prima facie case based on the record of conviction which include[d] the jury verdicts;" "[t]here was not a natural and probable

6

consequence theory . . . nor a felony murder theory;" and "[t]he jury made an express finding that . . . Williams acted with the intent to kill" by its true finding of the drive-by shooting special circumstance allegation.

This appeal ensued.

DISCUSSION

## I.    Applicable Law and Standard of Review

Effective January 1, 2019**,** the Legislature passed Senate Bill No. 1437 (SB 1437) " 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant . . . who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)" (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)  SB 1437 amended section 188, subdivision (a)(3), to require that all principals to murder must act with either express or implied malice to be convicted of that crime, with the exception of felony murder under section 189, subdivision (e). (Stats. 2018, ch. 1015, § 2.)  SB 1437 amended section 189, subdivision (e), to provide that for a felony murder conviction the defendant had to be the actual killer, an aider and abettor who acted with the intent to kill, or a major participant who acted with reckless indifference to human life in the underlying felony.  (Stats. 2018, ch. 1015, § 3.)

SB 1437 added section 1172.6, which provides a procedure for defendants convicted of murder to seek resentencing if they are able to establish they could not be convicted of murder under the amendments to sections 188 and 189 effective January 1, 2019.  (Stats. 2018, ch. 1015, § 4.)

7

Section 1172.6, subdivision (a) states that a person convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter" may file a petition for resentencing "when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. [¶] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

Section 1172.6, subdivision (b) requires the petitioner to submit a declaration that avers eligibility for relief under the statute (based on the requirements of subdivision (a)), states the superior court case number, the year of conviction, and whether the petitioner requests appointment of counsel. (§ 1172.6, subd. (b).)

Section 1172.6, subdivision (c), which establishes how the trial court must evaluate the petition, reads in relevant part: "Within 60 days after service of a petition that meets the requirements set forth in

8

subdivision (b), the prosecutor shall file and serve a response. The petitioner may file and serve a reply within 30 days after the prosecutor's response is served. . . . After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so."

In ascertaining whether a defendant has made a prima facie case for relief, the trial court may look at the record of conviction, which will necessarily inform its "prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.)[8]

We review de novo whether the trial court conducted a proper inquiry under section 1172.6, subdivision (c). (*People v. Harrison* (2021) 73 Cal.App.5th 429, 437.)

## II.    Williams Was Not Entitled to Section 1172.6 Relief

Williams filed a petition that included allegations that an information had been filed against him that allowed the prosecution to proceed under the natural and probable consequences doctrine, he was convicted of first degree murder, and he could not presently be convicted of first degree or second degree murder because of changes to

---

[8]    Prior to being renumbered section 1172.6, Senate Bill No. 775, which took effect on January 1, 2022, amended former section 1170.95 to codify certain holdings of *Lewis*, including the standard for determining the existence of a prima facie case. (Stats. 2021, ch. 551, § 1, subd. (b).)

section 188 or 189 made effective January 1, 2019. (§ 1172.6, subd. (a).) Because the petition's allegations must be accepted as true, the only basis to refuse to issue an order to show cause is if the record of conviction conclusively demonstrates Williams was not entitled to relief as a matter of law. (*Lewis, supra,* 11 Cal.5th at p. 971.)

The dispositive issue before us is whether the jury's true finding on the drive-by shooting special circumstance allegation, together with the court's instructions, demonstrates as a matter of law that Williams was convicted on a still valid theory of murder under the amendments to section 188 or 189 effective January 1, 2019. For the reasons we now explain, the answer is in the affirmative.

It is well settled that SB 1437 "does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought." (*People v. Gentile* (2020) 10 Cal.5th 830, 848 (*Gentile*).)[9] "Under a direct aider and abettor liability theory, the prosecution must prove the person who is not the actual killer 'engaged in the requisite acts [actus reus] and had the requisite intent [mens rea]' to aid and abet the target crime of murder." (*People v. Pacheco* (2022) 76 Cal.App.5th 118, 124 (*Pacheco*)[10].) A direct aider

_____

[9] *Gentile, supra,* 10 Cal.5th 830, was abrogated in part on another ground by Stats. 2021, ch. 551, § 2, which amended section 1172.6, subdivision (g), to expressly allow defendants whose convictions are not final to seek relief under SB 1437 on direct appeal.

[10] On May 18, 2022, our Supreme Court granted review in *Pacheco, supra,* 76 Cal.App.5th 118 (S274102) but has deferred further action pending disposition of *People v. Curiel* (dec. Nov. 4, 2021, G058604 [nonpub. opn.]), review granted January 26, 2022, S272238 [lead case], which presents the following issue: "Does a jury's true finding on a gang-murder special circumstance (Penal Code, § 190.2, subd. (a)(22)) preclude a defendant from making a prima facie showing of eligibility for resentencing under Penal Code section [1172.6]?"

10

and abettor's "guilt is based on a combination of the direct perpetrator's acts and the aider and abettor's *own* acts and *own* mental state." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117, italics in original.) " 'The aider and abettor doctrine merely makes aiders and abettors liable for their accomplices' actions as well as their own. It obviates the necessity to decide who was the aider and abettor and who [was] the direct perpetrator or to what extent each played which role.' " (*People v. Gomez* (2018) 6 Cal.5th 243, 279, italics in original.) "[A]s long as each juror is convinced beyond a reasonable doubt that defendant is guilty of murder as that offense is defined by statute, it need not decide unanimously by which theory he is guilty. [Citations.] More specifically, the jury need not decide unanimously whether defendant was guilty as the aider and abettor or as the direct perpetrator." (*People v. Santamaria* (1994) 8 Cal.4th 903, 918.)

The jury here was instructed on aiding and abetting using language in CALCRIM Nos. 401 and 403. As to the concept of direct aiding and abetting for "[i]ntended [c]rimes," which included murder, the jury was informed as follows:

> "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶] 1) The Perpetrator committed the crime [¶] 2) The defendant knew that the perpetrator intended to commit the crime [¶] 3) Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime [¶] AND [¶] 4) The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. [¶] Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime." (CALCRIM No. 401.)

11

As to the concept of aiding and abetting a murder under the natural and probable consequences doctrine, the jury was informed as follows:

"Every person who willfully, unlawfully and maliciously discharges a firearm from a motor vehicle is guilty of a violation of Penal Code section 12034, subdivision (d), a crime. [¶] . . . [¶] In order to prove this crime, each of the following elements must be proved: [¶] 1. A person unlawfully discharged a firearm from a motor vehicle, and [¶] 2. The discharge of the firearm was willful and malicious. [¶] . . . [¶]

"Before you may decide whether the defendant is guilty of murder, you must decide whether he is guilty of Penal Code section 12034(d). [¶] To prove that the defendant is guilty of murder, the People must prove that: [¶] 1. The defendant is guilty of aiding and abetting the crime of Penal Code section 12034(d). [¶] 2. During the commission of the crime of Penal Code section 12034(d), the crime of murder was committed. [¶] AND [¶] 3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of the murder was a natural and probable consequence of the commission of the crime of Penal Code [section] 12034(d).

"The evidence must show that an aider and abettor intended to facilitate or encourage the target offense of Penal Code [section] 12034(d) before or during the commission of the murder and attempted murders. [¶] A *natural and probable consequence* is one that a reasonable person would know is likely to happen i[f] nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence. If the murder was committed for a reason independent of the common plan to commit . . . Penal Code [section] 12034(d), then the commission of the murder was not a natural and probable consequence of Penal Code section 12034(d). [¶] To decide whether the crime of murder was committed, please refer to the separate instructions that I will give you on that crime." (CALCRIM No. 403; italics in original).

Because the aiding and abetting instructions did not refer to the *degree* of murder, the court directed the jurors to separate instructions explaining they could find Williams guilty of first degree murder under two theories: (1) "[a]ll murder which is perpetrated by any kind of willful, deliberate and premeditated killing with express malice aforethought is murder of the first degree," further stating that "[m]alice is express when there is manifested an intention unlawfully to kill a human being;" or (2) "[m]urder which is perpetrated by means of discharging a firearm from a motor vehicle intentionally at another person outside of the vehicle when the perpetrator specifically intended to inflict death, is murder of the first degree," further stating that an essential element of the drive-by murder is that "[t]he defendant specifically intended to kill a human being."

The court further instructed the jurors that they did not have to unanimously agree as to the *theory* of murder but they did have to unanimously agree as to the *degree* of murder: "If you find the defendant guilty of murder in the first degree, it is not necessary that the jury unanimously agree as to whether it is first degree murder based upon premeditation and deliberation or whether it is first degree based upon a drive-by shooting with intent to kill or whether it is first degree based upon aiding and abetting. It is only necessary that the jury unanimously agree that the killing was murder in the first degree under any of these theories."

The jurors were also instructed that *only* if they found Williams guilty of murder in the first degree were they then to consider whether the drive-by shooting special circumstance was true. The jury was

13

informed, using language in CALCRIM Nos. 700, 705, and 735 as follows:

> "As to Count 1 [accusing defendant of having committed the crime of murder, a violation of Section 187 of the Penal Code] only, if you find the defendant in this case guilty of murder of the first degree, you must also decide if the People have proved that the special circumstance is true. [¶] The People have the burden of proving the special circumstance beyond a reasonable doubt. If the People have not met this burden, you must find the special circumstance has not been proved. [¶] In order for you to return a finding that a special circumstance is or is not true, all 12 of you must agree. [¶] . . . [¶]

> "In order to prove the special circumstance of Discharge from Vehicle, the People must prove not only that the defendant did the act charged, but also that he acted with a particular intent or mental state. The instruction for the special circumstance explains the intent or mental state required. [¶] . . . [¶]

> "The defendant is charged with the special circumstance of committing murder by shooting a firearm from a motor vehicle. [¶] To prove that this special circumstance is true, the People must prove that: [¶] 1) The defendant or Lanare Wise shot a firearm from a motor vehicle, killing Stephanie Franklin [¶] 2) The defendant or Lanare Wise intentionally shot at a person who was outside the vehicle [¶] AND [¶] 3) At the time of the shooting, the defendant intended to kill."

Williams argues the trial court erred in summarily denying his section 1172.6 petition because his first degree murder conviction could have been predicated on a theory under which malice is imputed based solely on his participation in a crime. Relying on *Pacheco, supra*, 76 Cal.App.5th 118 and *People v. Offley* (2020) 48 Cal.App.5th 588 (*Offley*), Williams also argues that the trial court's instruction on the crime of willful discharge of a firearm from a vehicle under section 12034, subdivision (d), together "with [the] aiding and abetting" instructions

14

under CALCRIM Nos. 401 and 403, "open[ed] the path to a verdict of murder based on the natural and probable consequences doctrine." He claims that "[t]his is a particularly likely scenario in this case, because the jury seemed to credit [his] testimony that he was not the shooter. Thus, the jury might have also credited his testimony that although he had called Wise to the scene, he did not direct Wise to do anything, and Wise acted on his own. Because he (Williams) admitted calling Wise to the scene, the jury could have found that he had aided and abetted the discharge of a firearm. . . . The result would then have been a finding on the special circumstance based on the natural and probable consequences theory that murder was the natural and probable consequence of aiding the discharge of a firearm."

Williams' arguments are not persuasive as they are based on the premise that while the jury's true finding of the drive-by shooting special circumstance "certainly establishes" he intended to kill Franklin, it does not establish that he directly aided and abetted the killing because the finding "did not establish as a matter of law that [he] had acted with both the mens rea and the actus reus required of an aider and abettor" of murder. Williams contends the jury could have potentially looked to the instructions on aiding and abetting a murder under the natural and probable consequences doctrine and found he intended to kill Franklin under the drive-by shooting special circumstance allegation; however, under the natural and probable consequences theory, he only aided and abetted the crime of discharging a weapon. Hence, "without weighing the evidence," Williams contends it is possible he intended to kill Franklin, but he did

15

nothing to directly "aid, facilitate, promote, encourage, or instigate" the murder.  (CALCRIM No. 401).

Critically, Williams' evaluation of how the jury might have interpreted the court's instructions does not take into account that we, the appellate court, "must consider the instructions together as a whole, to determine whether it is reasonably likely a jury would interpret an instruction in a particular way, because we presume jurors understand and correlate all of the instructions" (*People v. Burton* (2018) 29 Cal.App.5th 917, 925) and the jurors are "presumed to have followed the court's instructions" (*People v. Sanchez* (2001) 26 Cal.4th 834, 852).

We agree with Williams that the drive-by shooting special circumstance instruction requires only that the jury find he had the intent to kill and does not address whether he acted as a perpetrator or aider and abettor in the murder.  Nevertheless, in considering the other instructions given to the jurors on the theories of first degree murder, and the theories of aiding and abetting a first degree murder, we conclude there is no merit to his argument that the jury could have potentially determined he was guilty of first degree murder based on a finding that he intended to kill Franklin, but that he only aided and abetted the crime of discharging weapon for which murder was a natural and probable consequence.

Williams' argument fails at the outset as it is premised on the assumption the jurors could find him guilty of *first degree* murder based solely on a finding that he had aided and abetted the discharge of a firearm for which murder was a natural and probable consequence. However, and as we have noted, the jurors were instructed that they

16

could only convict Williams of first degree murder if they found he had committed that crime as a direct perpetrator or based on aiding and abetting either premeditated and deliberate malice aforethought murder, or murder perpetrated by a drive-by shooting with the intent to kill.

In determining whether Williams was guilty of aiding and abetting first degree murder, the jurors would not have looked at instructions addressing aiding and abetting the discharge of a weapon for which murder was a natural and probable consequence. Rather, the jurors would have looked at the instructions on aiding and abetting a murder as the "intended crime," which informed them that they could find Williams guilty as an aider and abettor only if they found the People had proven Williams had acted with the intent to kill (mens rea) and by his words and conduct he had in fact aided and abetted the murder (actual reus). (CALCRIM No. 401.) Then, having found Williams guilty of murder in the first degree as an aider and abettor of first degree murder, the jury was directed to consider the drive-by shooting special circumstance allegation. By their true finding of the drive-by shooting special circumstance, the jurors defined the theory of the crime and found Williams had acted with the intent to kill, the " 'functional equivalent' of express malice" (*People v. Catlin* (2001) 26 Cal.4th 81, 151), thereby demonstrating their rejection of any reliance on the theory of aiding and abetting a murder under the natural and probable consequences doctrine.

In other words, by the jury's true finding of the drive-by shooting special circumstance, coupled with the earlier findings that the jury must have necessarily made to find Williams guilty of first degree

17

murder, as either the perpetrator or an aider and abettor, the record of conviction conclusively demonstrates the jury found he had acted with the requisite intent and conduct to convict him of first degree murder under the amendments to section 188 and 189 effective January 1, 2019, thereby rendering him ineligible for relief under section 1172.6.

Williams' reliance on the holding in *Pacheco*, *supra*, 76 Cal.App.5th 118, is misplaced. *Pacheco* is inapplicable to the case before us because its analysis is limited to the issue of the preclusive effect of the jury's true finding of the gang special circumstance allegation. (*Pacheco*, *supra*, 76 Cal.App.5th at p. 127.) In a footnote, the *Pacheco* court is clear that it did not consider any potential argument that the jury's first degree murder finding (premeditation and deliberation) or the related jury instruction (CALCRIM No. 521 [first degree murder instructions]), caused Pacheco to be ineligible for relief under section 1172.6 as a matter of law. (*Pacheco*, *supra*, 76 Cal.App.5th at p. 127, fn. 2.)

In *Pacheco*, Pacheco and other gang members jumped two people; one victim died and the other survived. (*Id*. at p. 121.) Pacheco was convicted of first degree murder as an aider and abettor, attempted murder, and gang participation. (*Ibid*.) The jury also found true a gang special circumstance allegation. (*Ibid*.) The jury was instructed on aiding and abetting a crime (which would include murder) (CALCRIM No. 401) and aiding and abetting a murder under the natural and probable consequences theory. (*Pacheco*, *supra*, at pp. 125–126.) The jury was also instructed that in order to find the gang special circumstance to be true, the People had to prove: " '[¶] 1. *A perpetrator* intentionally killed [the victim]; [¶] 2. At the time of the

18

killing, *the defendant* was an active participant in a criminal street gang; [¶] 3. *The defendant* knew that members of the gang engage in or have engaged in a pattern of crime gang activity; [¶] 4. The murder was carried out to further the activities of the criminal street gang; [¶] AND [¶] 5. *The defendant had the intent to kill at the time of the killing.*' (CALCRIM No. 736, italics added.)" (*Pacheco*, *supra*, at pp. 127–128.)

The appellate court reversed the trial court's summary denial of Pacheco's section 1172.6 petition as the jury's true finding on the gang special circumstance allegation did not render Pacheco ineligible for relief under section 1172.6 as a matter of law. (*Pacheco*, *supra*, 76 Cal.App.5th at p. 121.) The *Pacheco* court explained as follows: "[T]he jury's true finding on the gang special circumstance certainly establishes Pacheco intended to kill [the victim] at the time of his killing (the mens rea). But the gang circumstance instruction does not establish – as a matter of law – that Pacheco *directly aided and abetted* the killing of [the victim] (the actus reus)." (*Id*. at p. 128, italics in original.) "Therefore, the jury could have potentially found Pacheco intended to kill [the victim] under the gang special circumstance (the mens rea), but under the natural and probable consequence theory, Pacheco only actually aided and abetted the nontarget crime of disturbing the peace (the actus reus)." (*Ibid*.)

In sum, *Pacheco* is inapplicable to the case before us. Unlike in *Pacheco*, the People argue that the record of conviction conclusively demonstrates the jury could not have considered the drive-by shooting special circumstance allegation without first finding that Williams was guilty of first degree murder, as either a perpetrator or direct aider and

19

abettor, thereby rendering him ineligible for section 1172.6 relief as a matter of law. And it is that argument that we find dispositive.

Williams' reliance on *Offley*, *supra*, 48 Cal.App.5th 588, is similarly misplaced. Offley was convicted of murder, attempted murder, and shooting at an occupied motor vehicle after he and several fellow gang members fired shots into a vehicle, killing one occupant and seriously wounding another. (*Id.* at pp. 592–593.) The jury was instructed on the natural and probable consequences doctrine as follows: " 'A member of a conspiracy is not only guilty of a particular crime that to his knowledge his confederates agreed to and did commit, but is also liable for the natural and probable consequences of any crime of a co-conspirator to further the object of the conspiracy, even though that crime was not intended as a part of the agreed upon objective and even though he was not present at the time of the commission of that crime.' " (*Id.* at p. 593.)

The trial court summarily denied Offley's section 1172.6 petition based on the jury's true finding of a firearm enhancement allegation under section 12022.53, subdivision (d). (*Offley*, *supra*, 48 Cal.App.5th at p. 597.) That section imposes a sentencing enhancement if a defendant, in the commission of certain enumerated felonies, "personally and intentionally discharges a firearm and proximately causes great bodily injury [or] death." The trial court concluded those findings precluded section 1172.6 relief as a matter of law. (*Offley*, *supra*, at p. 594.)

The appellate court reversed, finding that section 12022.53, subdivision (d) does not refer to an " 'intent to achieve any additional consequence.' [Citation.] It is thus a general intent enhancement, and

does not require the prosecution to prove that the defendant harbored a particular mental state as to the victim's injury or death." (*Offley*, *supra*, 48 Cal.App.5th at p. 598.) "Because an enhancement under section 12022.53, subdivision (d) does not require that the defendant acted either with the intent to kill or with conscious disregard to life, it does not establish that the defendant acted with malice aforethought." (*Offley*, *supra*, at p. 599.)

Here, in contrast to the general intent enhancement at issue in *Offley*, the jury's true finding of the drive-by shooting special circumstance required the jury to find that Williams intended to kill during the murder. The special circumstance finding, together with findings the jury necessarily made in determining Williams was guilty of first degree murder, conclusively demonstrates he was convicted of first degree murder, and that the jury necessarily rejected any reliance on the theory of aiding and abetting a murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime.

## III. Conclusion

For the reasons stated above, the order summarily denying the petition for resentencing is affirmed. In light of our conclusion, we do not address the parties' other contentions.

### DISPOSITION

The February 23, 2022 order denying the petition for resentencing is affirmed.

21

 

                                      _____

                                           Petrou, J.

WE CONCUR:

_____

Fujisaki, Acting P.J.

_____

Rodríguez, J.

A164862/*People v. Williams*

Trial Court:     Alameda County Superior Court

Trial Judge:     Hon. Morris Jacobson

Counsel:     Office of Attorney General, Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Catherin A. Rivlin, Supervising Deputy Attorney General, Basil R. Williams, Deputy Attorney General, for Plaintiff and Respondent.

First District Appellate Project, Kathy R. Moreno, for Defendant and Appellant.